CITY BANK FARMERS TRUST COMPANY, as Substituted Trustee under Trusts Created by Agreement with OVIDE DE ST. AUBIN et al., for the Benefit of MARION DE ST. AUBIN, Respondent, *v.* OVIDE DE ST. AUBIN, JR., Individually and as Executor of OVIDE DE ST. AUBIN, Deceased, et al., Appellants; OVIDE DE ST. AUBIN, JR., Individually and as Executor of PERCIVAL DE ST. AUBIN, Deceased, et al., Respondents; ROMAN CATHOLIC BISHOP OF PROVIDENCE et al., Defendants.

First Department, May 3, 1946.

*John F. LeViness, Jr.,* of counsel (*W. H. Dannat Pell* with him on the brief; *Gwinn & Pell,* attorneys), for Ovide De St. Aubin, Jr., individually and as executor of the last will and testament of Ovide De St. Aubin, deceased, and Corinne De St. Aubin, defendants-appellants.

*J. Harlin O'Connell* of counsel (*Aloysius F. Schaeffner* with him on the brief; *Patterson, Eagle, Greenough & Day,* attorneys), for Alice Spengel, defendant-appellant.

*Herbert C. Pentz* of counsel (*Dillon, O'Brien & Clark,* attorneys), for Ovide De St. Aubin, Jr., as executor of the will of Percival De St. Aubin, deceased, defendant-respondent.

PECK, J. By trust indenture, dated July 16, 1920, between Ovide De St. Aubin and Percival De St. Aubin, as settlors, and plaintiff's predecessor, as trustee, three trusts were created. On the accounting of the trustee, questions have arisen as to the persons entitled to take the principal upon the termination of the second and third trusts.

Before stating the terms of these trusts, identification should be made of the individuals referred to therein. Marion De St. Aubin was the wife of the settlor Percival De St. Aubin and Edward De St. Aubin was the son of Marion and Percival. Edward died at fourteen years of age, unmarried and leaving no issue, on August 17, 1926. Marion died on February 15, 1942. Both Marion and Edward died residents of the State of Rhode Island.

The second trust provides for the payment of income to Marion during her life, and upon her death to Edward during his life, and " upon his death, to divide the principal of said

trust fund among the next of kin of said Edward De St. Aubin, in the manner and proportions directed by the then existing laws of the State of New York for the distribution of the assets of persons dying intestate.''

The third trust provides for the payment of income to Marion until Edward shall have attained the age of twenty-one, if she or he shall live so long, and when Edward shall have attained twenty-one for payment of the income to him until he shall have attained the age of thirty, if he shall live so long, and when he shall have attained thirty for payment to him of the principal. This trust further provides: '' In the event that said Edward De St. Aubin shall die before he shall attain the age of thirty, the Trustee upon the death of said Edward De St. Aubin shall pay the net income of said trust fund to Marion De St. Aubin, if she shall then be living, during her life, and upon her death, the Trustee shall divide the principal of said trust fund equally among the children of said Edward De St. Aubin, if any, then surviving, the issue of any deceased child to take in place of the parent by right of representation, and in the event that no children or any issue of any deceased children of said Edward De St. Aubin shall then be living, shall divide the principal of said trust fund among the next of kin of said Edward De St. Aubin in the manner and proportions directed by the then existing laws of the State of New York for the distribution of the assets of persons dying intestate.''

As Edward's next of kin are now entitled to distribution of the principal of both trusts, the questions arise whether his next of kin should be determined as of the time of his death or as of the time of Marion's death, and whether his next of kin should be determined by the intestacy laws of the State of New York or by the intestacy laws of the State of Rhode Island as the New York law provides for distribution of personalty in accordance with the intestacy laws of the State in which a person dying intestate is domiciled. Distribution among the various defendants will vary in accordance with the answer to these questions.

Special Term held that the intention of the settlors was the same for both trusts and, adopting the primary meaning of the words '' next of kin,'' i. e., those persons who succeed to one's personal property at the time of his death, and viewing the decision in *Matter of Chalmers* (264 N. Y. 239) as controlling, held that the intention of the settlors was to make distribution to Edward's next of kin as of the time of his death. The court

further held that the law of New York rather than the law of Rhode Island should determine the next of kin.

We agree with Special Term that the settlors had the same intention with respect to the identification of next of kin in both trusts and intended that the law of New York rather than the law of Rhode Island should determine. The two trusts were created by the same instrument, with the same beneficiaries, and looked to ultimate distribution among the same class; presumably, therefore, the same words have the same meaning in both trusts. We also think it evident that the settlors, one of whom was a resident of New York and the other a resident of Rhode Island, in creating a trust in New York with a New York trust company and providing, without knowing the State in which Edward might be domiciled at the time of his death, for distribution to his next of kin in accordance with the intestacy laws of the State of New York, intended that his next of kin should be determined by the law of New York.

As to the time of determining Edward's next of kin, we must search for the intention of the settlors. Because the provisions of the third trust are more explicit as to intention, we shall deal with it first.

In the third trust, the settlors contemplated and specifically provided for the event of Edward's dying before his mother. The provision is that upon Edward's death the income shall be paid to his mother for her life and upon her death the principal shall be distributed to Edward's issue, if any, then surviving, and in default of issue then living, to Edward's next of kin. The intention that Edward's next of kin should be determined as of Marion's death rather than as of Edward's death is indicated in several ways: (1) the only provision "upon the death of said Edward" is prolongation of the trust with a life estate to Marion intervening between Edward's death and the time of distribution; (2) the termination of the trust and distribution of principal is "upon her death"; (3) the persons primarily intended to take as distributees are the issue of Edward, living at Marion's death; (4) Edward's next of kin, to take in default of issue, presumably are to be determined at the same time, and must be determined at the same time to avoid the possible contradiction of issue, living at Edward's death but not living at Marion's death, taking as next of kin although expressly ruled out as distributees; (5) it would be incongruous, though not impossible (*United States Trust Co.* v. *Taylor,* 193 App. Div. 153), for Marion to take a vested remainder as Edward's

next of kin at his death, while taking only a life estate by express provision of the trust.

Authority is hardly required or helpful in determining intention in the light of such explicit expressions of intention. The facts of the case are quite analogous, however, to the facts in *N. Y. Life Ins. & Trust Co.* v. *Winthrop* (237 N. Y. 93) where a life estate was given to the mother, then a life estate to a daughter, and upon the death of the mother and daughter the remainder to the daughter's issue, and in default of issue to her next of kin. The daughter predeceased the mother, leaving no issue. The holding was that the daughter's next of kin should be determined as of the mother's death rather than the daughter's death. The court said in words squarely applicable to the present case (pp. 102, 104): "Since a contingency existed, since the testator did not intend that the interests of issue should vest as soon as they were born, his expectation must have been that the vesting would be postponed until the trust was at an end. [Citing cases.] If it was postponed till then for issue, it was postponed for next of kin. * * * Issue living at the daughter's death, had there been any, would themselves have been next of kin, if the class of next of kin was to be determined at that time. The result would be that in the event of their death before the trust was ended, the substitutionary gift would fail. That is not what the testator meant. The next of kin were to be ascertained as if the daughter had lived up to the time precribed for distribution."

The second trust lacks the clear expressions of intention contained in the third trust. It simply provides a life estate to Marion, then a life estate to Edward, and upon his death distribution to his next of kin. Viewed as an isolated trust, entirely apart from the balance of the trust instrument, we would have to say, as the court said in *Matter of Chalmers* (264 N. Y. 239, *supra*), that the search for intention is a search for a phantom, and we would have to turn to a consideration of such formulae as the primary meaning of next of kin, the law's favoring the vesting of estates, and the so-called "divide and pay over" rule. We should then agree with Special Term that the decision in *Matter of Chalmers* (*supra*) is controlling. There, a life estate was given to the mother, then a life estate to the daughter, and "from and after the decease of my said daughter, * * * to her heirs at law absolutely." (P. 243.) The court, observing that it was impossible to determine the real intention of the testator and that there was no reason to think that he cared whether the class of heirs and next of

kin were fixed at one time or another, held that next of kin should be determined as of the daughter's death on the basis of the rule that the law favors the vesting of estates at the earliest time. As the court said: " We give effect to the implications of the formula where implications of actual intent are absent." (P. 247.)

We cannot regard all indications of actual intent as being absent here, however. We need not look at the second trust with blinders on, and do not feel constrained to such a narrow view. We believe that the second trust should be viewed in its context in the trust instrument and that we should regard all provisions of the trust instrument which shed any light upon the settlor's intention, including the disposition intended by the use of the same words in the third trust, and should follow the intention indicated rather than adopt a formula which discards all evidence of intention.

We conclude that the settlors had the same intention in the use of the words " next of kin " in the second trust as in the third trust and that the intention was that Edward's next of kin should be determined as of the time of Marion's death in accordance with the intestacy laws of the State of New York.

The interlocutory judgment should, therefore, be modified in accordance with this opinion, and as so modified affirmed, with costs, to all parties appearing by separate attorneys and filing separate briefs, payable out of the trust funds.

MARTIN, P. J., TOWNLEY, GLENNON and CALLAHAN, JJ., concur.

Interlocutory judgment unanimously modified in accordance with opinion, and as so modified affirmed, with costs to all parties appearing by separate attorneys and filing separate briefs, payable out of the trust funds. Settle order on notice.