Ovide de ST. AUBIN, Jr., as he is executor of the last will and testament of Percival de St. Aubin, Plaintiff,

v.

George J. SHEEHAN, as he is executor of the last will and testament of Farrell D. Coyle, Defendant.

Civ. A. No. 1540.

United States District Court
D. Rhode Island.

Jan. 10, 1956.

Walter V. Moriarty, Stuart H. Tucker, John W. Moakler, Providence, R. I., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Girard R. Jetton, Jr., Attorneys, Dept. of Justice, Washington, D. C., for defendant.

DAY, District Judge.

In this action the plaintiff in his capacity as executor of the last will and testament of Percival de St. Aubin seeks to recover an alleged overpayment of federal estate taxes and interest in the amount of $13,330.14. He asserts that this overpayment resulted from the erroneous inclusion in the gross estate of said Percival de St. Aubin of the value of the corpus of two trusts created by the decedent and his father, Ovide de St. Aubin, by an indenture of trust dated July 16, 1920.

The material facts were stipulated by the parties. They may be summarized as follows:

Under said indenture of trust, dated July 16, 1920, three separate trust funds were created. The first was primarily for the benefit of the mother of the decedent and is not involved in this action.

The indenture of trust provided that the income from the second trust fund was to be paid to the decedent's wife for life, then to the decedent's son, Edward de St. Aubin, during his life, and upon his death, the trustee was directed "to divide the principal of said trust fund among the next of kin of said Edward de St. Aubin, in the manner and proportions directed by the then existing laws of the State of New York for the distribution of the assets of persons dying intestate."

By the terms of the indenture the income from the third trust fund was to be paid to the decedent's wife, Marion, until his son, Edward, became 21 years of age, and then to Edward until he became 30 years old, when the entire principal would be paid to him. The indenture also provided that if Marion died before Edward became 21 years old, then the income would become immediately payable to him, and that if Edward died after 21 and before 30, Marion, if living, would receive said income during her life and that upon her death the principal should be divided equally among Edward's children, if any, then surviving, with the issue of any deceased child to take in place of the parent by right of representation and that if there were no children or issue of any deceased children of Edward then living it should be divided "among the next of kin of said Edward de St. Aubin in the manner and proportions directed by the then existing laws of the State of New York for the distribution of the assets of persons dying intestate."

The indenture also provided that in case Edward died before attaining 30 years of age and Marion did not survive him, the principal of the third trust fund should be divided equally among his children then living and if none were then living then it should be divided among the next of kin of Edward in the manner and proportions directed by the then existing laws of the State of New York for the distribution of the assets of persons dying intestate.

Edward de St. Aubin died intestate on August 17, 1926, at the age of 14. He left no issue, no brothers or sisters and no issue of any brothers or sisters. At the time of his death his next of kin under the statutes of the State of New York were his father and mother who were then living.

Subsequently, on November 1, 1940, the decedent, Percival de St. Aubin, died. At the time of his death the value of the corpus of the second trust fund was $79,249.95 and the value of the principal of the third trust fund was $80,364.06.

On January 31, 1942, the plaintiff, as executor, filed a timely federal estate tax return reporting therein an estate tax liability of $145,157.19 which was duly paid. This return did not include any portion of either of said trust funds in the gross estate of the decedent, although the executor did make disclosure of the existence of said trusts therein and set forth his contention that they were not includible in the decedent's gross estate.

During the following three years there were numerous conferences between representatives of the Bureau of Internal Revenue and the decedent's estate concerning the amount of the federal estate taxes properly payable by the estate. Among the matters in dispute were the valuations in the return of certain stocks owned by the decedent, the deductibility of certain charitable bequests and whether any part of said second and third trust funds were properly includible in said gross estate for federal estate tax purposes.

During this period, to-wit, on February 27, 1943 and December 31, 1943, two thirty-day letters, so-called, were sent by the Internal Revenue Agent in Charge setting forth proposed adjustments of the tax liability of the decedent's estate.

In the first of these letters, $84,207.56 was included in the gross estate as the present value of the remainder interest in the two trust funds at the date of the decedent's death. In this letter the reason for its inclusion was stated in the following manner:

"Value of transfer referred to in agreement of July 16, 1920 filed with the return after life use by widow is added to the gross estate as a transfer to take effect at the death of decedent, with possibility of reversion to decedent, and as a vested interest."

The plaintiff did not agree to this proposed adjustment and filed a timely protest. After a further conference between the representatives of the estate and the Bureau of Internal Revenue the second of the thirty-day letters was sent to the plaintiff. In this letter the interest of the decedent in the two trust funds was likewise included in the gross estate of the decedent with a value fixed at $84,207.56. The reason for its inclusion was stated therein to be as follows:

"The remainder value after life use by the widow of the transfer under the agreement of July 16, 1920 is included in the gross estate as the entire trust comes within the purview of Section 811(c) of the Internal Revenue Code."

Further conferences were held and finally on December 5, 1944, the Commissioner forwarded a notice of deficiency (a ninety-day letter, so-called) to the plaintiff wherein he determined that the estate's tax liability was $209,573.17 and that the determination disclosed a deficiency of $38,433.64. In making this determination the Commissioner included in the gross estate the remainder value of said trust funds, fixed at $84,-

207.56, and as the reason for his action stated:

"The remainder value, after the life use of the decedent's widow, of a trust created July 16, 1920 is included in the gross amount of $84,-207.56, on the basis that the transfer was to take effect in possession or enjoyment at or after the death of the decedent; that there was the possibility of reversion of the corpus of the trust to the decedent upon the termination of the trust; and that the decedent had a vested interest in the remainder interest at the time of his death. Sections 811(c) and 811(a) of Internal Revenue Code."

At the time of the determination of the deficiency by the Commissioner there was pending in the Supreme Court of New York a complaint filed by the trustee under said indenture of trust seeking a construction of said indenture and a determination of the persons entitled as the next of kin of Edward de St. Aubin to a distribution of the second and third trust funds, and particularly whether such next of kin should be determined as of the date of the death of Edward on August 17, 1926, or as of the date of the death of his mother who had died on February 15, 1942.

On February 13, 1945, the Supreme Court rendered its decision in which it held that said next of kin of Edward should be determined as of the date of his death. City Bank Farmers Trust Co. v. St. Aubin, Sup., 53 N.Y.S.2d 357. Under this determination the decedent and his wife Marion were the only next of kin of Edward and each had a vested one-half interest in the trust funds as distributees after the termination of Marion's life estate.

Subsequently, on March 2, 1945, the plaintiff filed in the Tax Court of the United States a petition for a review of the Commissioner's determination of deficiency. On November 1, 1945, this case was settled pursuant to a stipulation between the Commissioner and the plaintiff whereby the deficiency was adjudged to be $25,090.30 instead of $38,433.64 as determined by the Commissioner.

The agreed statement of facts herein and exhibit D attached thereto show that prior to the execution of the stipulation the Technical Staff of the Bureau of Internal Revenue recommended settlement of the petition for review for a deficiency determination of $25,090.30. In its report the Technical Staff pointed out that under the decision of the Supreme Court of New York, although it was being appealed, the estate of the decedent would have only an interest in one-half of the remainder interest in the two trusts. It also stated that the plaintiff's representative saw little chance that this decision would be reversed. It further recited that the plaintiff's representative had submitted a proposal of settlement whereby only one-half of the value of the remainder interest, namely, $42,103.78, would be included in the gross estate. The report then stated that if the next of kin of Edward are to be determined as of the date of his death, then the trust funds subject to the life estate of the decedent's wife "belonged one-half to decedent and one-half to decedent's wife." In this event it continued "one-half, subject to the wife's life estate, would be includible in the gross estate under section 811(a) of the Internal Revenue Code * * *." The report further pointed out that if, on appeal, the appellate court should hold that said next of kin should be determined as of the date of the death of Marion, then in order to include any of the trust funds in the gross estate it would be necessary to show that section 811(c) of the Code, 26 U.S.C.A. (I.R.C.1939), applied. There was then, it added, the possibility that the Tax Court, following its previous decisions, might conclude that section 811(c) did not apply and exclude the entire $84,207.56 from the gross estate. The report then concluded that in view of these uncertainties and the concession made by the plaintiff with respect to the disallowance of charitable deductions amounting to $119,200, it would be for

the best interests of the government to accept the proposal of settlement made by the plaintiff. This settlement, as indicated above, was subsequently effected by the stipulation of the parties filed in the Tax Court, and the deficiency so determined was paid with interest in November, 1945 and January, 1946. These payments included the sum of $10,837.51 as the estate tax on said trust funds and $2,492.63 as interest thereon.

Sometime thereafter the original construction of the indenture of trust by the Supreme Court of New York was reversed by the Appellate Division in City Bank Farmers Trust Co. v. de St. Aubin, Jr., 270 App.Div. 588, 61 N.Y.S.2d 736, and this reversal was later affirmed by the New York Court of Appeals in City Bank Farmers Trust Co. v. de St. Aubin, Jr., 296 N.Y. 953, 73 N.E.2d 264. These decisions of the Appellate Court held that the next of kin of Edward were to be determined as if he had died immediately after the death of his mother, and that the corpus of the trusts was distributable to Corinne de St. Aubin and the estate of Ovide de St. Aubin. Consequently the decedent did not possess a vested one-half remainder interest in the two trust funds at the time of his death.

On October 23, 1950, the plaintiff filed a claim for a refund of said sums of $10,837.51 and $2,492.63 paid as taxes and interest as aforesaid, claiming as the basis therefor—(1) that the decedent possessed no interest in said trust funds properly includible in his gross estate and (2) the provisions of The Technical Changes Act of 1949, 63 Stat. 891, and particularly section 7(c) of said Act.

This claim for refund was disallowed by the Commissioner on January 3, 1952. In his disallowance he stated that "on the basis of the facts known at the time determination of the tax was made the portion of the trust in question was properly includible under section 811(a) of the Internal Revenue Code"; that if the inclusion was improper refund of the tax was nevertheless barred under the provisions of section 911 of the Code and that section 7 of The Technical Changes Act has no application to and is not designed to afford relief where inclusion of a transfer was made under provisions of the Code other than section 811(c) thereof. The instant action was commenced on February 24, 1953.

The defendant contends that the plaintiff is not entitled to the relief he seeks because the taxes for which recovery is sought were imposed under section 811(a) of the Code and that the three year Statute of Limitations contained in Sections 910 and 3772 of the Internal Revenue Code of 1939 bars this action because the plaintiff's claim for refund was filed more than four years after payment of said taxes and interest. He also contends that assuming the said sum of $42,103.78 representing one-half of the value of the remainder interest in the trust funds was included in the gross estate under the provisions of said section 811(c), the amendment to said section by The Technical Changes Act does not exclude said interest from the gross estate because, he contends, the decedent's reversionary interest was express and over five per cent of the value of the trust funds.

The plaintiff on the other hand contends that said taxes were assessed pursuant to section 811(c) and that his claim comes within the provisions of said Technical Changes Act which granted relief to a taxpayer where the overpayment resulted from the retroactive amendment to said section. If this contention is sound, the Statute of Limitations is not a bar to this action because it was instituted within one year after the enactment of said Technical Changes Act in accordance with the provisions of section 7(c) thereof.

At the outset it is to be noted that this action is barred by the three year Statute of Limitations contained in Sections 910 and 3772 of the Code, the claim for refund not having been filed until October 23, 1950, unless the plaintiff has established that his claim comes within the provisions of Section 7(c) of said Tech-

nical Changes Act which removed the statutory bar where the overpayment resulted from the retroactive amendment made by said Act to Section 811(c) of the Code. Sharpless v. United States, 3 Cir., 1955, 221 F.2d 574.

The first issue to be decided then is—were the taxes involved herein assessed pursuant to Section 811(a) or pursuant to Section 811(c)? In support of his contention that they were imposed pursuant to section 811(c) the plaintiff argues that the contents of the two thirty-day letters and the ninety-day letter are conclusive evidence that the Commissioner imposed the taxes under section 811(c). He concedes that in the first of the thirty-day letters the Commissioner stated, as one of the bases for his proposed deficiency assessment, that the decedent had a vested interest in the trust, and that in the ninety-day letter he based the deficiency assessment on both sections 811(a) and 811(c). Notwithstanding these concessions, plaintiff places emphasis on the fact that the second thirty-day letter referred only to Section 811(c) and argues that an analysis of the situation indicates that the Commissioner's reliance upon section 811(a) as authority for the assessment was in the nature of a *makeweight* and that the real basis for the assessment was section 811(c).

I do not agree with these contentions. In my opinion these letters alone are not determinative of the issue to be decided by me. The two thirty-day letters were merely proposals for the adjustment of an asserted estate tax liability and neither proposal was accepted by the plaintiff. Conferences between the representatives of the plaintiff and the Bureau followed and subsequently the ninety-day letter was issued. While this letter constituted a formal determination of a deficiency, it did not represent the ultimate determination as a result of which the taxes sought here to be recovered were assessed and paid. After the issuance of the ninety-day letter, the plaintiff appealed from the determination and filed a petition in the Tax Court of the United States Court for a redetermination of the deficiency declared by the Commissioner.

The events which followed the filing of this petition, rather than the contents of the three letters above described, indicate clearly to me the basis upon which the Commissioner made the ultimate assessment against the estate of the decedent.

The provisions of the trust indenture of July 16, 1920, were manifestly ambiguous. Undoubtedly, this ambiguity prompted the representative of the plaintiff to make his proposal for a settlement of the petition for redetermination of the deficiency in the Tax Court which the Technical Staff approved and recommended to the Commissioner. Although the eventual decisions of the appellate courts of New York reversed the interpretation of the trust indenture by the Supreme Court of that State, I am satisfied that the representatives of the plaintiff and the Bureau did not anticipate this result and assumed the earlier interpretation would stand. The report of the Technical Staff in addition indicated that it had grave doubt that an assessment under section 811(c) would be upheld by the Tax Court. The report then concluded with a recommendation that the pending action be settled by a stipulation for the assessment of a deficiency based upon the inclusion of one-half of a remainder interest in the trust funds under section 811(a).

I am satisfied that the Commissioner followed this recommendation and made his final determination of deficiency pursuant to section 811(a).

The assessment having been made pursuant to section 811(a), it follows that this action is barred by the provisions of sections 910 and 3772 of the Internal Revenue Code of 1939. There remains no occasion to consider the second contention urged by the defendant.

Judgment shall be entered for the defendant.